## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

TAMICA FRASER,               )
                               )
            Plaintiff,     )
                               )     CIVIL NO. 2005-0129
v.                           )
                               )
                               )
KMART CORPORATION,     )
                               )
           Defendant.    )
                               )
                               )
_____ )

## <u>MEMORANDUM OPINION</u>

FINCH, SENIOR JUDGE

      THIS MATTER comes before the Court on a Motion for Summary Judgment filed by Defendant Kmart Corporation.  Plaintiff Tamica Fraser opposes such Motion.  After careful consideration and upon review of the briefs submitted by the parties, the Court issues the following ruling.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

      Plaintiff alleges the following counts against Defendant: (1) violation of the Virgin Islands Civil Rights statute 10 V.I. C. § 64; (2) constructive discharge in violation of the Wrongful Discharge Act, V.I. Code Ann. tit. 24, § 76(a); (3) intentional or negligent infliction of emotional distress; and (4) breach of the duty of good faith and fair dealing

      Plaintiff began working at Kmart in November 1998 as an hourly employee.  <u>See</u> Plaintiff's Concise Statement of Additional Facts ("CSOF") at ¶ 1.2.  In June 2002, Kmart hired a new male Store Manager for its Sunny Isle store in St. Croix, Virgin Islands, who acted as one

of Plaintiff's supervisors.  Id. at ¶¶ 3, 7.  Plaintiff also had a female supervisor during her employment with Defendant.  Id. at ¶ 7.  Plaintiff's male supervisor eliminated her position as Jewelry Manager in November 2002 and made her the Unit and Pricing Manager in the main office where he worked.  Id. at ¶ 2.  Plaintiff's duties were to go through the store and price items, marking them up or down.  Id. at ¶¶ 4-5.

Plaintiff claims that her male supervisor made improper advances, putting his hands on her and attempting to kiss her.  Complaint at ¶ 10.  In addition, her female supervisor and three other female staff in the office allegedly made rude sexual comments to and about Plaintiff, causing Plaintiff distress.  CSOF at ¶¶ 7-9.  Plaintiff alleges that they asked her about her favorite sexual positions, whether she had had sex the night before, when she lost her virginity, and began a sex survey around the office asking employees their favorite sexual positions.  Id. at ¶¶ 7-9, 14-15.  Plaintiff claims that none of the employees had received any training by Kmart in what constitutes sexual harassment or a hostile work environment.  Id. at ¶¶ 10-11.

Plaintiff complained about the sexual harassment to Kmart's Personnel Manager who informed her male supervisor.  Id. at ¶ 12.  Plaintiff claims that her male supervisor disregarded the complaint and told her that, if that was the way the women relieved their stress in the office, then Plaintiff should simply ignore the women.  Id. at ¶¶ 17-18.  In addition, Plaintiff alleges that her male supervisor continued to sexually harass Plaintiff by attempting to kiss her, grabbing her leg and making lewd and suggestive comments to her, such that Plaintiff was afraid to be alone with him.  Id. at ¶¶ 19-20.  Plaintiff avers that her male supervisor confronted Plaintiff at a dance club and asserted that he would be the one doing her performance evaluation, and that she should think about that when refusing him a dance.  Id. at ¶ 21.

Plaintiff complained about the alleged abusive conduct to Kmart's hotline number as well

as to Kmart's Regional Human Resources Manager.  Id. at ¶¶ 22-26.  In January 2003, the Regional Human Resources Manager and the district manager for Kmart arrived at the Sunny Isle store to investigate Plaintiff's complaints of sexual harassment, assault and hostile work environment.  Id. at ¶¶ 26-28.  Plaintiff claims that the investigation was a sham and the Regional Human Resources Manager referred to Plaintiff as "emotionally unstable" and an "orphan" with problems.  Id. at ¶¶ 29-30.  Plaintiff insists that Kmart did nothing to stop the conduct, in violation of its own anti-harassment policies.  Id. at ¶ 30, 36.  Plaintiff alleges that she tried to transfer to the other Kmart store in St. Croix but her male supervisor prevented her from doing so.  Id. at ¶¶ 42-44.  On January 19, 2004, Plaintiff furnished notice of her resignation effective January 28, 2004.  Id. at ¶¶ 45-49.  Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 28, 2004 and received a Notice of Right to Sue dated June 6, 2005.  Complaint at ¶ 56.

Plaintiff filed this lawsuit in August 31, 2005 against Defendant Kmart.  Defendant filed a Motion for Summary Judgment (Docket No. 113) on August 22, 2008 seeking to dismiss all of Plaintiff's counts contained in the allegations pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.  Plaintiff opposes Defendant's Motion, claiming that she has set forth sufficient evidence for a jury to find in her favor on her claims.  See Pl's Opp'n to Def.'s Mot. for Summ. J. at 5 (Docket No. 128).

## II.     STANDARD OF REVIEW

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). A factual dispute is deemed genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. at 247-48. The moving party has the burden of proving that there is no material issue of fact in dispute and, once the moving party has carried its burden, the nonmoving party must produce sufficient evidence that will reasonably support a jury verdict in its favor and not just "some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986). In analyzing this motion for summary judgment, this Court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. See Morton Intern., Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 680 (3d Cir. 2003); Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).

## III.    DISCUSSION

Defendant contends that Plaintiff's claim for (A) assault and battery is precluded by the exclusive remedy under the Workers Compensation Act ("WCA"), 24 V.I.C. §§ 251-285, (B) discrimination under Title 10 of the Virgin Islands code fails because 10 V.I.C. § 64 does not provide a private right of action, (C) constructive discharge is not a cognizable claim under the Wrongful Discharge Act ("WDA") and is preempted in its application to supervisors, (D) intentional infliction of emotional distress is not supported by any facts indicating extreme and outrageous conduct, and (E) breach of good faith and fair dealing fails because there was no contract between the parties  See Def.'s Mem. in Supp. of Mot. for Summ. J. (Docket No. 114). The Court will consider each issue in turn.

4

## A.   Assault and Battery

Defendant argues that Plaintiff's claim for assault and battery, which arose from the alleged acts of sexual harassment she was subjected to at work, is precluded by the WCA because the injuries Plaintiff suffered are compensable only under the WCA.[1]  See Def.'s Mem. in Supp. of Mot. for Summ. J. at 4.   Plaintiff contends that there is an exception to the exclusivity bar for tort suits where the employee can show that the conduct of the employer can be regarded as so egregious as to exceed the bounds of negligence and constitute intentional wrongdoing.  See Pl.'s Opp'n to Mot. for Summ. J. at 7.

At this stage in the proceedings, Plaintiff's arguments in support of her claim of assault and battery are of no consequence to the Court's consideration of the Summary Judgment Motion and the Court finds that this issue is moot.  Although her First Amended Complaint asserted a claim for assault and battery in Count I, Plaintiff sought leave to amend her complaint and excluded that claim.  On October 8, 2008, the Court granted Plaintiff's Motion to Amend the Complaint and her Second Amended Complaint was deemed filed as of that date (Docket No. 125).  As a result, Plaintiff's assault and battery claims were withdrawn as of October 8, 2008 when the Court granted Plaintiff's Motion to Amend.  Therefore, Plaintiff's assault and battery claim is no longer before the Court and is not subject to consideration.

## B.   Title 10 of the Virgin Islands Code

Count I of Plaintiff's Complaint contends that Defendant's actions violate the Virgin Islands civil rights statute 10 V.I.C. § 64.  Defendant argues that Plaintiff's discrimination claim

---

[1] The WCA, when applicable, provides an exclusive remedy for an employee's claims regarding injuries arising out of and in the course of employment.  See Whitmore v. HEPC Sugar Bay, Inc., 2002 U.S. Dist. LEXIS 4350, at *10 (D.V.I. Mar. 12, 2002); see also Chinnery v. Government of Virgin Islands, 865 F.2d 68, 70 (3d Cir. 1989) ("When an employee's injury is compensable under a workers' compensation statute, by reason of exclusive remedy provisions, such as WCA § 284(a), the employer is not liable for negligence at common law").

should be dismissed because there is no private right of action under 10 V.I.C. § 64.  See Def.'s Mem. in Supp. of Mot. for Summ. J. at 7-8.

On October 21, 2005, the Court granted Defendant's Partial Motion to Dismiss and dismissed Count III of Plaintiff's initial Complaint, which asserted a violation of 10 V.I.C. § 64. See Order Granting Def.'s Partial Motion to Dismiss, October 21, 2005 (Docket No. 14).  The Court noted therein that the court in Miller v. Virgin Island Housing Authority, 2005 WL 1353395, at *5 (D.V.I. June 3, 2005), held that a civil action cannot be brought directly in court for violation of 10 V.I.C. § 64.  Id.

Under the law-of-the-case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." American Civil Liberties Union v. Mukasey, 534 F.3d 181, 187 (3d Cir. 2008) (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800 (1988)).  "This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues."  Id. (citation and quotation marks omitted); see also Council of Alternatives v. Hooks, 179 F.3d 64, 69 (3d Cir. 1999) (emphasizing that "the law of the case doctrine bars courts from reconsidering matters actually decided").

The Court finds that application of the law-of-the-case doctrine in this matter warrants dismissal of Plaintiff's claim in Count I of the Complaint inasmuch as the Court already has decided as a matter of law that there is no private right of action pursuant to 10 V.I.C § 64.[2] Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's claim

---

[2] Additionally, the Court notes that, to the extent that Plaintiff's claims in Count I of her Complaint are brought pursuant to Chapter 1 of Title 10 of the Virgin Islands Code, Plaintiff cannot recover because that chapter of Title 10 does not afford protection for discrimination on the basis of sex.  See Miller v. V.I. Hous. Auth., 2005 U.S. Dist. LEXIS 11146, at *4 (D.V.I. 2005); see also 10 V. I. C. § 2 ("Discrimination' includes refusal of sale or service, employment, or of setting up different standards in any of these, or segregation, based on race, creed, color, or national origin").

for violation of 10 V.I.C. § 64.

### C.  Constructive Discharge

Count II of Plaintiff's Complaint contends that Defendant's actions constitute constructive discharge in violation of the WDA.  Plaintiff testified that she resigned from her employment with Defendant due to the alleged sexual harassment and hostile working environment she was experiencing under her supervisors and store employees.  See CSOF at ¶¶ 45-47.  Defendant argues that Plaintiff cannot recover for constructive discharge because constructive discharge is not a cognizable claim under the WDA.  See Def.'s Mem. in Supp. of Mot. for Summ. J. at 8.  Even if the Court finds that constructive discharge is a cognizable claim under the WDA, Defendant argues that Plaintiff has not asserted any facts to substantiate such a claim.  Id.  Additionally, Defendant maintains that Plaintiff was a supervisor while employed by Defendant and she cannot recover under the WDA because the WDA is preempted in its application to supervisors.  Id. at 9.  The Court will address each of Defendant's arguments.

#### 1.  *Cognizable Claim Under WDA*

There is a split of authority among courts sitting in the Virgin Islands with respect to the viability of a claim for constructive discharge under the WDA.[3]  The court in Harley v. Caneel Bay, Inc.,193 F. Supp.2d 833, 841-42 (D.V.I. 2002) recognized a claim for constructive discharge under the WDA whereas this Court in Williams v. Kmart, 2001 WL 304024, at *4

---

[3] The Court notes that the Supreme Court of the Virgin Islands has not yet ruled on the question of whether or not constructive discharge is a cognizable claim under the WDA.  When confronted with an undecided issue of territorial law, the Court must predict how the Supreme Court of the Virgin Islands would rule on the issue.  Edwards v, HOVENSA, LLC, 497 F.3d 355, 362 (3d Cir. 2007); see Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).

(D.V.I. March 5, 2001) held that constructive discharge is not a cognizable claim under the WDA.[4]

In <u>Williams</u>, the Court deferred to the Department of Labor's ("DOL") interpretation of the WDA in reaching its conclusion that constructive discharge is not a valid claim under the WDA.  <u>See</u> <u>Williams</u>, 2001 WL 304024 at *4.  The Court noted that "the interpretation of a statutory scheme by the administrative agency charged with its enforcement is entitled to great deference. . . . [C]ourts are obligated to regard as controlling a reasonable, consistently applied administrative interpretation."  <u>Id.</u> (quoting <u>Abramson v. Georgetown Consulting Group, Inc.</u>, 765 F. Supp. 255 (D.V.I. 1991)).  However, the Court's deference to the DOL was in error because an administrative agency's interpretation of a question of law is not binding in cases (1) involving pure statutory construction and (2) where a court has concurrent jurisdiction to hear the case.

The Third Circuit has held that deference to agency interpretations is not required where the interpretation of a particular statute does not "implicate agency expertise in a meaningful way" but presents instead "a pure question of statutory construction for the courts to decide." <u>Drakes v. Zimski</u>, 240 F.3d 246, 250 (3d Cir. 2001) (quoting <u>Sandoval v. Reno</u>, 166 F.3d 224, 239-40 (3d Cir. 1999)); <u>see</u> <u>INS v. Cardoza-Fonseca</u>, 480 U.S. 421, 446 (1987); <u>Chevron U.S.A. Inc v. Natural Resources Defense Counsel, Inc.</u>, 467 U.S. 837 (1984); <u>see also</u> <u>The Village, V.I. Partners in Recovery v. Virgin Islands</u>, 39 V.I. 109, 112 (V.I. Terr. Ct. 1998) (holding that court's authority to review DOL's interpretation of statute is plenary).  Courts have generally held that the term "discharge" encompasses "constructive discharge" in labor relations law and

_____

[4] The Court notes that a Motion for Reconsideration of the plaintiff's WDA claim was filed in <u>Williams</u> but the defendant's petition for chapter 11 bankruptcy protection stayed any further proceedings in the case before the Court could rule on the motion.  Subsequently, the parties reached a settlement agreement and the case was dismissed before a decision was issued on said motion.

civil rights law without any apparent reliance on agency interpretations.  See Goss v. Exxon Office Sys. Co., 747 F.2d 885, 887 (3d Cir. 1984); J.P. Stevens & Co. v. NLRB, 461 F.2d 490, 494 (4th Cir. 1972).  Because courts have been able to discern whether the term "discharge" includes "constructive discharge" without any expert assistance from administrative agencies, this Court in Williams should not have deferred to the DOL's interpretations in finding that constructive discharge is not a cognizable claim under the WDA.  Rather, the Court should have considered the question anew.  See Sandoval, 166 F.3d at 239-40.

The Virgin Islands Legislature has given both the courts and the DOL concurrent jurisdiction to provide remedies for violations of the WDA.[5]  Notwithstanding the Legislature's delegation of independent enforcement authority to the DOL, the WDA does not permit the DOL to regulate the scope of the judicial power vested by the statute.  See Adams Fruit Co., 494 U.S. at 650 (indicating that Congress's delegation of administrative role to U.S. DOL does not empower U.S. DOL to limit judiciary's authority under statute).  Moreover, courts are not obligated to defer to an agency's interpretation of a statute when that agency is not exclusively charged with its enforcement.  Harley, 193 F. Supp. 2d at 842; see Adams Fruit Co. v. Barrett, 494 U.S. 638, 649 (1990); Reich v. Local 30 International Brotherhood, 6 F.3d 978, 988 (3d Cir. 1993); see also Hess Oil V.I. Corp. v. Richardson, 849 F. Supp. 211, 216 (D.V.I. App. Div. 1995) ("There is no language in the WDA which requires the employee first to file a claim with the DOL and then exhaust that avenue before bringing an action in court").

Considering the fact that the Virgin Islands Legislature did not delegate enforcement or interpretive authority solely to the DOL, the Court finds that the Legislature did not intend the DOL to have the final word regarding the WDA.  Consequently, the DOL's interpretations of the

---

[5] The Virgin Islands Legislature vested power in the courts to hear actions for wrongful discharge independent of any power it gave to the DOL.  WDA, V.I. Code Ann. tit. 24, § 76(a).

WDA are not binding on the courts.  See Crandon v. United States, 494 U.S. 152, 177 (1990);

Skidmore v. Swift & Co., 323 U.S. 134, 137-40 (1944); Hess Oil V.I. Corp., 849 F. Supp. at 217;

see also Adams Fruit Co., 494 U.S. at 650 ("[I]t would be inappropriate to consult executive

interpretations . . . to resolve ambiguities surrounding the scope of [the] judicially enforceable

remedy").

    The Court finds that the DOL's interpretation under its administrative processes deserves

at best only limited deference from the Court as a possibly persuasive interpretation.  See Harley,

193 F. Supp. 2d at 842.  The weight of the DOL's persuasive authority in a particular case will

depend on the thoroughness evident in its considerations, the validity of its reasoning, its

consistency with earlier and later pronouncements, and other relevant factors.  See Madison v.

Resources for Human Development Inc., 233 F.3d 175 (3d Cir. 2000).  In Harley, the court held

that the DOL's interpretation that constructive discharges are not cognizable under the WDA "is

without any basis either in the statute or any reasoned articulation; it is grounded on a

misinterpretation of its earlier authority."  Harley, 193 F. Supp. 2d at 843.[6]

---

[6] As the court in Harley explained, the DOL' decisions, which rule that constructive discharge is not a
viable claim under the WDA, "reveal no reasonable, consistent interpretation of the WDA."  Id. at 841.
The DOL purports to have derived these rulings from the language in the Territorial Court's decision in
Christopher v. Government of the Virgin Islands, Civ. No. 321/1993 (Terr. Ct. Nov. 25, 1993) (affirming
on review DOL decision dismissing complaint of wrongful discharge for lack of jurisdiction).  In
Christopher, the court held that "[s]uspensions are not within the purview of [the WDA]" because the
WDA "offers recourse only to those employees who have been permanently discharged from their
employment . . . ."  Id. at 2.  Neither the DOL's initial ruling nor the court's affirmance in Christopher
had anything to do with an employee's constructive discharge.  Rather, the DOL and the Christopher
court held that an employer's adverse actions demoting or suspending an employee without terminating
the employment relationship do not constitute a "discharge" under the WDA because a discharge requires
a permanent termination of the employment relationship.  Christopher does not provide any authority
whatsoever for the alternative proposition that constructive discharge is not a cognizable claim under the
WDA.  Yet, the DOL's subsequent decisions, ruling that the WDA does not apply to claims of
constructive discharge, misinterpret Christopher and fail to supply any statutory or other form of analysis
to support their conclusion.  See Harley, 193 F. Supp. 2d at 841.  Because these DOL decisions
misinterpret Christopher  and are not based on legal authority, the Court does not owe them deference.
Id. at 840-841.

In resolving the question of whether the term "discharge" as used in the WDA encompasses "constructive discharge, the Court must predict how the Supreme Court of the Virgin Islands would decide this issue. <u>See</u> <u>Edwards</u>, 497 F.3d at 362 n.3.  Because the issue presents a question of statutory construction, the Court looks to the language of the statute itself and presumes that "the legislature expresses its legislative intent through the ordinary meaning of the words it chooses to use."  <u>See</u> <u>Hess Oil V.I. Corp. v. Richardson</u>, 894 F. Supp. 211, 215 (D.V.I. 1995); <u>Harley</u>, 193 F. Supp. 2d at 838.  Section 76(c) of the WDA states that, "[a]ny employee discharged for reasons other than those stated in subsection (a) of this section shall be considered to have been wrongfully discharged . . . ."  24 V.I.C. § 76(c).  In employment law, the term "discharge" ordinarily encompasses the concept of constructive discharge, and "there is nothing in the way the term is used in the WDA to indicate that it is used in any but the ordinary sense."  <u>Harley</u>, 193 F. Supp. 2d at 838; <u>see also</u> <u>Clowes v. Allegheny Valley Hosp.</u>, 991 F.2d 1159, 1161 (3d Cir. 1993) (applying doctrine of constructive discharge to claim brought pursuant to Age Discrimination in Employment Act, 29 U.S.C. § 691); <u>Goss,</u> 747 F.2d at 887 (noting "universal recognition among the courts of appeals" that doctrine of constructive discharge is applicable in Title VII cases); <u>J.P. Stevens & Co.</u>, 461 F.2d at 494 (applying doctrine of constructive discharge in action brought pursuant to National Labor Relations Act, 29 U.S.C. § 158(a)).

In anticipating whether the Supreme Court of the Virgin Islands would incorporate constructive discharge into the WDA, the Court considers the underlying purpose of the WDA.  The WDA is remedial in nature and is intended to protect employees against tortuous termination by employers in violation of public policy.  <u>See</u> <u>Mendez v. Coastal Systems Development, Inc.</u>, 2008 WL 2139373, at *4 (D.V.I. May 20, 2008).  The Court finds that recognition of

constructive discharge as a cognizable claim furthers the WDA's purpose of protecting employees from the loss of their jobs for reasons other than the nine permissible grounds enumerated in the statute.  See 24 V.I.C. § 76.[7]  On the other hand, barring claims for constructive discharge under the WDA would allow an employer to avoid the intended results of the statute simply by creating an atmosphere so intolerable that a reasonable person would feel compelled to resign.  Harley, 193 F. Supp. 2d at 838.  Because the WDA has a remedial purpose, the Court predicts that the Supreme Court of the Virgin Islands would interpret it expansively to incorporate constructive discharge.  See Edwards, 497 F.3d at 362.  Therefore, the Court reverses its previous ruling in Williams v. Kmart, 2001 WL 304024 and finds that discrimination claims for constructive discharge are cognizable under the WDA.  Consequently, Plaintiff's constructive

---

[7] Section 76 of the WDA, enacted by the Virgin Islands Legislature in 1986, sets forth the grounds for lawful employee discharge as follows:

(a) Unless modified by union contract, an employer may dismiss any employee:

(1) who engages in a business which conflicts with his duties to his employer or renders him a rival of his employer;
(2) whose insolent or offensive conduct toward a customer of the employer injures the employer's business;

(3) whose use of intoxicants or controlled substances interferes with the proper discharge of his duties;

(4) who wilfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer; provided, however, the employer shall not bar an employee from patronizing the employer's business after the employee's working hours are completed;

(5) who performs his work assignments in a negligent manner;

(6) whose continuous absences from his place of employment affect the interests of his employer;

(7) who is incompetent or inefficient, thereby impairing his usefulness to his employer;

(8) who is dishonest; or

(9) whose conduct is such that it leads to the refusal, reluctance or inability of other employees to work with him.

discharge claim under the WDA is properly before the Court.

### 2.  *Support for Constructive Discharge Claim*

The plaintiff carries the initial burden under the WDA to establish a prima facie case of wrongful discharge.  Rajbahadoorsingh v. Chase Manhattan Bank, 168 F. Supp. 2d 496, 505 (D.V.I. 2001)[8] (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  To accomplish this, the plaintiff must prove, by a preponderance of the evidence, that: (1) she was an employee;[9] (2) of a covered employer;[10] (3) she was discharged; and (4) the discharge was wrongful.[11]  Rajbahadoorsingh, 168 F. Supp. 2d at 505.  Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is equated to a formal discharge for remedial purposes.  Pennsylvania State Police v. Suders, 542 U.S. 129, 141 (2004).  In order for the plaintiff to show that she was constructively

---

[8] The court in Rajbahadoorsingh held that a claimants' burden of proof is the same under both the WDA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(e).  Rajbahadoorsingh, 168 F. Supp. 2d at 505.  In evaluating whether Plaintiff has established a prima facie case under the WDA, the Court predicts that the Virgin Islands Supreme Court would adopt the Title VII approach as the Virgin Islands Superior Court did in Fenton v. C&C Constr. and Maintenance, Inc., 48 V.I. 263, 270 (V.I. Super. Ct. 2007); see Mendez v. Hovensa, L.L.C., 2008 U.S. Dist. LEXIS 15127, at *13 (D.V.I. 2008).  The burden shifting test adopted in Rajbahadoorsingh was applied to a WDA claim where an employer decided to dismiss an employee for allegedly discriminatory reasons.  In the present matter, Plaintiff terminated her employment on her own volition, claiming that she could not handle the alleged sexual harassment and hostile working environment.  Because this case involves a claim for constructive discharge, the Court will use a slightly modified version of the burden shifting test outlined in Rajbahadoorsingh to account for the differences between constructive discharge and traditional wrongful dismissal claims under the WDA.  See Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 581 (3d Cir. 1996); see also Sarullo v. United States Postal Serv., 352 F.3d 789, 797-98 (3d Cir. 2003) (holding that burden shifting test must be "tailored to fit the specific context in which it is applied").

[9] An "employee" is one who is engaged in labor employment, but is not, among other things, an agricultural laborer, a seaman, a volunteer, or an executive/professional.  See 24 V.I.C. § 62.

[10] An "employer" is a person who "has employed five (5) or more employees for each working day in each of the twenty (20) or more calendar weeks in the two (2) year period proceeding a discharge, but not a 'public employer.'"  See 24 V.I.C. § 62.

[11] Neither Plaintiff's status as an "employee" nor Defendant's status as a "covered employer" is in dispute in this case.  Therefore, the Court will not address these issues.

discharged, she "must allege in good faith . . . that she resigned because her employer made her working conditions so unpleasant or difficult that she was forced to resign." Harley, 193 F. Supp. 2d at 838; see also Clowes, 991 F.2d at 1162-63 (stating that "a reasonable employee will usually explore . . . alternative avenues before coming to the conclusion that resignation is the only option"). A court should look for evidence of coercion, such as threats of discharge, suggestions to the employee that he or she resign or retire, demotions or reductions in pay or benefits, alterations of job responsibilities, unfavorable performance evaluations, and false accusations of misconduct. Id. at 1161-62; see Sznaider v. Livengrin Found., Inc., 2001 U.S. Dist. LEXIS 24180 at * 10 (E.D. Pa. Nov. 20, 2001).

In cases such as this one, involving claims of sexual harassment against an employer, the harassment must be sufficiently severe or pervasive to alter the condition of the victim's employment and create an abusive work environment. See Weston v. Pennsylvania, 251 F.3d 420, 425-26 (3d Cir. 2001). This is an objective test, which requires that the plaintiff show that the working conditions were so difficult or unpleasant that a reasonable person in the employee's shoes would feel compelled to resign. Id.; see also Goss, 747 F.2d at 888 (adopting objective standard for finding constructive discharge, which requires court finding that "employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign").

If the plaintiff succeeds in establishing a prima facie case, a presumption of wrongful discharge will arise against the employer. See Rajbahadoorsingh, 168 F. Supp. 2d at 505. The burden of production then shifts to the employer to rebut the presumption. Id.; see Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981); Smith v. V.I. Port Authority, 2008 U.S. Dist. LEXIS 67737 at *54-55 (D.V.I. Aug. 29, 2008). Under this second

14

prong, the employer must produce evidence which tends to disprove the plaintiff's claim that she was wrongfully discharged.  <u>Rajbahadoorsingh</u>, 168 F. Supp. 2d at 505 (citing <u>St. Mary's Honor Ctr. v. Hicks,</u> 509 U.S. 502, 506-07 (1993); <u>Burdine</u>, 450 U.S. at 255).

If the employer rebuts the presumption of wrongful discharge, the burden of production shifts back to the plaintiff to show "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in the employer's defense such that a reasonable fact-finder could rationally find in favor of the plaintiff.  <u>Id.</u> (citing <u>Fuentes v. Perskie</u>, 32 F.3d 759, 765 (3d Cir. 1994)); <u>see</u> <u>Doe v. C.A.R.S. Protection Plus, Inc.</u>, 527 F.3d 358, 368 (3d Cir. 2008).  Under this third and final prong, the employee must produce evidence which raises a genuine issue of fact regarding whether or not she was wrongfully discharged.  "[I]f the plaintiff has pointed to evidence sufficient[ ]" to establish a genuine dispute of material fact, "to survive summary judgment, the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case." <u>Fuentes</u>, 32 F.3d at 764.

Plaintiff claims that unwelcome sexual conduct on the part of Defendant's employees and supervisors created an intimidating, hostile, and offensive working environment so unpleasant that a reasonable person in Plaintiff's shoes would have felt compelled to resign.  <u>See</u> CSOF at ¶¶ 45 – 47.  Specifically, Plaintiff alleges that her male supervisor made sexual advances to Plaintiff asking her for a kiss, trying to touch and grab her and asking her to lunch.  <u>See</u> Fraser Dep. 148:7-156:23, 225:14-19, 229:14-230:16, May 14, 2007.  Plaintiff claims that she complained to her male supervisor, explaining that his conduct was inappropriate and made her uncomfortable, but he did not do anything to change his behavior and continued to sexually harass her.  <u>See</u> CSOF at ¶¶ 17-18.

Additionally, Plaintiff claims that three other women in the office made sexual comments

15

and inquiries that made Plaintiff uncomfortable.  <u>See</u> CSOF at ¶¶ 12-13.  Plaintiff alleges that the women asked her what sexual positions she enjoyed and whether she liked sex.  <u>Id</u>. at ¶¶ 8-9. Plaintiff claims that her complaint to the regional human resources manager failed to remedy the situation and actually made it worse because another employee allegedly assaulted Plaintiff when she learned that Plaintiff had filed a complaint about her.  <u>Id</u>. at ¶¶ 16-23.

Plaintiff alleges that she tried to transfer to the other Kmart store in St. Croix because she could no longer deal with the sexual harassment she was experiencing at work.  <u>See</u> CSOF at ¶¶ 42 – 44.  Although Plaintiff claims that her male supervisor prevented her from transferring, Defendant has presented rebuttal evidence that suggests otherwise.  A declaration allegedly written by Plaintiff states, "I thought about transferring to store 7413.  I decided however that working here was part of me.  I grew up in this store.  I think that five years here was important to me."  <u>See</u> Fraser Dep., Exhibit 10.  Defendant argues that the language contained in Plaintiff's declaration indicates that she was not constructively discharged because she did not voluntarily seek to transfer to another store.  <u>See</u> Def.'s Reply Mem. in Supp. of Mot. for Summ. J. at 11.

Plaintiff avers that she began looking for another job and eventually resigned from her employment with Defendant due to the hostile work environment and sexual harassment.  <u>Id</u>. at ¶¶ 45 – 47; <u>see</u> Fraser Dep. at 102:17-103:2, 203:8-13.  However, Defendant contends that the evidence of record is inconsistent with Plaintiff's claim of constructive discharge.  <u>See</u> Def.'s Reply Mem. in Supp. of Mot. for Summ. J. at 9-10.  As Defendant points out, the language contained in Plaintiff's letter of resignation from employment suggests that she was not forced to endure working conditions so unpleasant and difficult that a reasonable person would resign.  <u>Id</u>. Plaintiff's letter states, "I hereby tender my resignation as of January 23, 2004.  Thank you for the many experiences I've had during my five years of service with your company."  <u>See</u> SOF ¶

12; see also Graham v. State Farm Mut. Ins. Co., 193 F. 3d 1274, 1284 (11th Cir. 1999)

("[P]laintiff's letter of resignation, in which she expressly thanks State Farm, does not by its

terms lend support to a theory that plaintiff was forced to resign due to 'intolerable' working

conditions").  Defendant argues that Plaintiff's failure to mention the alleged intolerable

conditions that led her to resign in her letter belie any contention that she was constructively

discharged.  See Def.'s Reply Mem. in Supp. of Mot. for Summ. J. at 9.

Based on the evidence presented by Plaintiff, a reasonable juror could find, by a

preponderance of the evidence, that the allegedly abusive working environment became so

intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign.

Therefore, the Court finds that Plaintiff has met her initial burden under the WDA to establish a

prima facie case of wrongful discharge.  However, Defendant has produced evidence which

tends to disprove Plaintiff's constructive discharge claim and the Court finds that such evidence

suffices to rebut the presumption of wrongful discharge.

There is a genuine dispute as to three material facts: (1) whether Plaintiff was subject to

sexual harassment or discrimination during her employment and to what extent, (2) whether

Defendant made Plaintiff's working conditions so difficult or unpleasant that a reasonable person

would feel compelled to resign, and (3) whether Plaintiff terminated her employment due to the

alleged hostile working environment created by Defendant.  Drawing all reasonable inferences in

favor of Plaintiff, the Court finds that Plaintiff has provided adequate evidentiary support for her

constructive discharge claim and she need not come forward with additional evidence beyond

her prima facie case to withstand summary judgment.  A genuine issue of material fact exists and

the evidence is such that a reasonable jury could return a verdict for Plaintiff.

### 3.  *Whether Plaintiff was a Supervisor*

Defendant argues that Plaintiff was a supervisor at the time of her resignation and, therefore, she is not afforded protection under the WDA.  See Def.'s Mem. in Supp. of Mot. for Summ. J. at 9.  The WDA is preempted by the National Labor Relations Act ("NLRA") to the extent that it applies to supervisory employees. See St. Thomas-St. John Hotel & Tourism Assoc. v. Government of U.S. Virgin Islands ex. rel. Virgin Islands Dept. of Labor, 357 F.3d 297, 304 (3d Cir. 2004).[12]   The NLRA defines a supervisor as:

> [A]ny individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11).  The Supreme Court has found that an employee need only perform one of the statutory supervisory functions to qualify as a supervisor.  NLRB v. Health Care & Retirement Corp. of America, 511 U. S. 571, 573-574 (1994); see also National Labor Relations Board v. Kentucky River Community Care, Inc., 532 U.S. 702, 713 (2001) ("Employees are statutory supervisors if (1) they hold the authority to engage in any 1 of the 12 listed supervisory functions, (2) their exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment, and (3) their authority is held "in the interest of the employer").

Plaintiff held the position of Unit and Pricing Manager at the time she resigned from Kmart.  CSOF at ¶ 14.  Plaintiff testified that her job duties included "price checks, daily inventory, transfers to Puerto Rico, departmental pricing, unit integrities."  See Pl.'s Opp'n to

---

[12] Because "the WDA would have such an effect on employers by exerting a significant degree of compulsion upon employers to bargain with supervisors as employees," the Third Circuit held that the WDA violates Section 14(a) of the NLRA and as such is federally preempted by the NLRA in its application to supervisors.  St. Thomas-St. John Hotel & Tourism Assoc., 357 F.3d at 304 (citing Beasley v. Food Fair of North Carolina, Inc., 416 U.S. 657 (1974)).

Mot. for Summ. J. at 19.  Another Unit and Pricing Manager at Kmart was asked to explain her duties and responsibilities and she testified that she was responsible for "[p]utting up or taking down signs, making sure the prices are correct," using the computer to print labels and prices, and doing paper work such as "price list corrections."  See Francis Dep. 26:1-27:7, May 15, 2007; Pl's Response to Def.'s Statement of Undisputed Facts at ¶ 15.  The store manager testified that Plaintiff's job included inventory control, labeling and pricing merchandise.  Id. Plaintiff's supervisor also stated that the job duties and responsibilities for the Unit and Pricing Manager position were to "make sure everything has the correct price." See CSOF at ¶¶ 4 – 5.

Plaintiff suggests that her inability "to hire, promote, transfer, suspend, terminate or address the grievances of any Kmart employee" establishes that she was not a supervisor at Kmart.  See Pl.'s Opp'n to Mot. for Summ. J. at 18.  Defendant contends that Plaintiff's supervisory status is evidenced by her job description, which indicates that training and supervising associates are among the duties of a Unit and Pricing Manager.  See Def.'s Mem. in Supp. of Mot. for Summ. J. at 9; CSOF at ¶ 15.  Kmart's sales manager testified that Plaintiff was authorized to give instructions to department managers.  See Def.'s Resp. to CSOF at ¶¶ 4, 53.  When asked the question, "do you have any employees under you," Plaintiff responded, "yes. . . .the department managers."  See Fraser Dep. 127:1-25.   Although Defendant alleges that Plaintiff's response shows that she supervised department managers, there is a dispute as to whether Plaintiff actually supervised them or simply held a higher position on the employee totem-pole.  Plaintiff claims that she neither supervised nor trained anyone during her employment with Kmart.  See Pl.'s Opp'n to Mot. for Summ. J. at 19; CSOF at ¶ 53.

Drawing all reasonable inferences in favor of Plaintiff, the Court finds that a genuine issue of material fact exists with regard to Plaintiff's status as a supervisor during her employment and

the evidence is such that a reasonable jury could find that she was not a supervisor.  Accordingly,

Defendant's Motion for Summary Judgment is denied as to Plaintiff's claim for constructive

discharge.

### D.   Intentional or Negligent Infliction of Emotional Distress

Count III of Plaintiff's Complaint alleges that Defendant's actions constitute intentional

infliction of emotional distress and, if not intentional, then they constitute negligent infliction of

emotional distress.  Defendant argues that Plaintiff failed to identify any facts that would support

a finding of either intentional or negligent infliction of emotional distress.  See Def.'s Mem. in

Supp. of Mot. for Summ. J. at 11.

#### 1.   *Intentional Infliction of Emotional Distress*

An action for intentional infliction of emotional distress requires four elements: "(1) the

conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it

must cause emotional distress; and (4) the distress must be severe."  Chuy v. Philadelphia Eagles

Football Club, 595 F.2d 1265, 1273 (3d Cir. 1979); see Alvarez v. Pueblo Int'l, Inc., 24 V.I. 141

(Terr. Ct. 1988);[13] Restatement (Second) of Torts §46 (1965).[14]  The conduct in question must

have been done with the intention both to do the act and to produce emotional distress, or it must

have been done recklessly in deliberate disregard for the high probability that emotional distress

---

[13] In Alvarez v. Pueblo Int'l, Inc., the Territorial Court held that before an intentional infliction claim reaches the jury in the Virgin Islands, a plaintiff must present sufficient evidence that the defendant's conduct was so extreme and outrageous as to be considered indecent, atrocious and intolerable in our society.  Alvarez, 24 V.I. at 147 (citing Restatement (Second) of Torts §46 cmt. d).

[14] "The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary."  1 V.I.C. § 4 (2003).  Section 46 of the Restatement (Second) of Torts states, in relevant part, that "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm results from it, for such bodily harm."

would follow.  Minerva Marine, Inc. v. Spiliotes, 2006 U.S. Dist. LEXIS 13922, at *119 (D.N.J. Mar. 13, 2006).

The defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Restatement (Second) of Torts §46 cmt. d; see Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir.1988); Moolenaar v. Atlas Motor Inns, Inc., 616 F.2d 87, 89 (3d Cir. 1980).  When there is no physical injury, the conduct is expected to be sufficiently extreme and outrageous to guarantee that the claim is genuine.  Moolenaar, 616 F.2d at 89; see also Eddy v. Virgin Islands Water and Power Authority, 369 F.3d 227, 232 (3d Cir. 2004) (holding that plaintiff must "prove that he suffered severe distress that is not unreasonable, exaggerated, or unjustified").  In most cases, continuous malicious actions must exist before an employer may be held liable and courts will generally consider the pattern and duration of distress as well as employee susceptibility.  McClease v. R.R. Donnelley & Sons Co., 226 F. Supp. 2d 695, 703 (E.D. Pa. 2002); see  Matczak v. Frankford Candy and Chocolate Co., 136 F.3d 933, 940 (3d Cir. 1997).

Plaintiff argues that Defendant should be found liable for its supervisors' and employees' outrageous behavior, which allegedly caused her severe emotional distress.  See Pl.'s Opp'n to Mot. for Summ. J. at 39.  Plaintiff alleges that, during her employment with Defendant, (1) she was continuously subject to acts of sexual harassment by Kmart's supervisors and managerial employees, (2) after becoming aware of such conduct, Kmart failed to adequately investigate or address her complaints,[15] (3) Kmart failed to transfer her or her male supervisor to a different

---

[15] Plaintiff alleges that she complained to various Kmart decision-makers concerning the harassment she suffered at the hands of her immediate supervisors.  See Pl.'s Opp'n to Mot. for Summ. J. at 3.  She

store, and (4) her male supervisor retaliated against Plaintiff by providing her with a poor

performance evaluation.  Id.  Plaintiff contends that Defendant is vicariously liable for its

employees' intentional acts of sexual harassment.  Id. at 8-15.

As a result of Defendant's actions, Plaintiff avers that she suffered extreme stress and

testified that "her very personality was changing as a result of the extreme stress she was under."

Id. at 39; see CSOF at ¶ 45.  Plaintiff alleges that she missed several days of work due to her

mental stress and began seeing Dr. Copemann regularly for anxiety.  See Pl.'s Opp'n to Mot. for

Summ. J. at 39; CSOF at ¶ 46.

Courts have found instances of outrageous conduct in the employment context where an

employer has engaged in both sexual harassment and retaliatory behavior against an employee.

See Andrews v. Philadelphia, 895 F.2d 1469, 1487 (3d Cir. 1990); Bowersox v. P.H. Glatfelter

Co., 677 F. Supp. 307, 311 (M.D. Pa. 1988).  A corporation may be found liable for the

intentional infliction of emotional distress where a supervisor or decision-maker is made aware

of the sexual harassment of an employee, but outrageously fails to investigate the claim or take

any steps to address it.  See Davis v. U.S. Steel, 779 F.2d 209, 211 (4th Cir. 1985); Ford v.

Revlon, 734 P.2d 580, 585 (Ariz. 1987).  Ford v. Revlon involved a supervisor's relentless

sexual harassment of a subordinate over a period of approximately seventeen months.  Because

of the corporate hierarchy's failure to take steps to address the plaintiff's repeated pleas for

assistance, the court found that the defendant acted outrageously in completely ignoring the

---

further alleges that no remedial action was ever taken after corporate decision-makers were put on notice
of such harassment.  Id. at 4.

plaintiff's situation, needlessly dragging out the matter for months and leaving the employee wholly without redress.[16]  Revlon, 734 P.2d at 585.

In Shaffer v. National Can Corp., 565 F. Supp. 909 (E.D. Pa. 1983), the plaintiff was the subject of sexual harassment over the course of almost four years.   Her supervisor repeatedly, and on one occasion publicly, invited her to accompany him socially.  Id. at 910.  When the plaintiff refused to accept his invitations, the supervisor made threats concerning the plaintiff's employment status and retaliated against the plaintiff by making her job difficult to perform.  Id. The district court found that these allegations were sufficient to state a cause of action for intentional infliction of emotional distress.  Id. at 915; see also see also Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998) ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate or successively higher authority over the employee"); Bowersox, 677 F. Supp. at 311-312 ("That a supervisor would subject his female employee to highly offensive speech and conduct in a close working environment and then, as a result of her negative reaction to that conduct, make the employee's job impossible to perform could in the court's opinion lead an average member of the community to exclaim, 'Outrageous!'").

Drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has provided sufficient evidence such that a jury could find Kmart's employees' alleged sexually harassing conduct so outrageous and utterly intolerable in the workplace as to render Defendant vicariously liable for intentional infliction of emotional distress.  Defendant would surely have known that subjecting Plaintiff to continuous acts of sexual harassment would cause her severe

---

[16] After ten months of relentless sexual harassment by her supervisor, the plaintiff in Ford v. Revlon was told by the defendant's human resources "trouble shooter" to put the matter in the back of her mind and try to forget the situation.  Revlon, 734 P.2d at 585.  The defendant's Equal Employment Opportunity specialist never responded to the plaintiff concerning her complaints.  Id.

emotional trauma.  Additionally, the Court finds that Plaintiff has presented sufficient evidence of her own distress to withstand summary judgment.  See Eddy, 369 F.3d at 232 ("[S]evere distress may encompass mental anguish, fright, horror, grief, worry and other emotional disturbances.  The extent of the severity is to be measured by whether any reasonable man could be expected to endure it").  Therefore, the Court denies Defendant's Motion for Summary Judgment as to Plaintiff's claim for intentional infliction of emotional distress.

## 2.  *Negligent Infliction of Emotional Distress*

A physical manifestation of emotional distress is a necessary element to recover on a claim for negligent infliction of emotional distress.  Restatements (Second) of Torts § 313; see Anderson v. Government of the Virgin Islands, 180 F.R.D. 284, 286 (D.V.I. 1998).  Plaintiff does not allege that Defendant's conduct caused her any physical repercussions.  Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's claim for negligent infliction of emotional distress.

## E.  Good Faith and Fair Dealing

Count IV of Plaintiff's Complaint alleges that the actions of Defendant were in violation of the employment contract between the parties in that Defendant breached the duty of good faith and fair dealing.  Defendant argues that Plaintiff's claim for a breach of the implied covenant of good faith and fair dealing must fail because there was no employment agreement between Plaintiff and Defendant. See Def.'s Mem. in Supp. of Mot. for Summ. J. at 16.

Under the Restatement (Second) of Contracts § 205 (1981), "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its  enforcement.[17]"

---

[17] Good faith means "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad

See Boehm v. Chase Manhattan Bank, 2002 WL 31986128, at *5 (D.V.I. Dec. 30, 2002).  The covenant of good faith and fair dealing in employment matters serves to protect the integrity of all of the promises made by the parties to the agreement setting forth the terms and conditions of employment.  See Mendez v. Coastal Systems Development, Inc., 2008 WL 2149373, at *4 (D.V.I. May 20, 2008).  A breach of such a covenant therefore constitutes a breach of an obligation created by the contract rather than breach of an obligation arising independently from the contract.  Id.; see also In re Chambers Development Co., Inc., 148 F. 3d 214, 227 (3d Cir. 1998) ("The obligation to deal in good faith arises out of the underlying contract"); Rivera v. Cracker Barrel Old Country Store Inc., 2003 WL 21077965, at *7 (D.N.J. March 3, 2003) ("Absent an employment agreement, . . . a claim for bad faith breach simply cannot stand").

In certain circumstances, an employment contract may be derived from employee manuals or handbooks.  See Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 308 (3d Cir. 2004); Bostic v. AT&T, 2003 U.S. Dist. LEXIS 25477, at *21 (D.V.I. Apr. 15, 2003).  "Courts have analyzed the reasonable expectations of numerous employees regarding their employment manuals, finding that some constitute implied contracts." Sellitto v. Litton Systems, Inc., 881 F.Supp. 932, 936 (D.N.J. 1994); see Sterling Nat'l Mortg. Co. v. Mortgage Corner, 97 F.3d 39, 44 (3d Cir. 1996).  The Third Circuit has held that "the duty of good faith limits the parties' ability to act unreasonably in contravention of the other party's reasonable expectations." Id. at 44.

Plaintiff argues that the contracts upon which she relies to support her breach of good faith and fair dealing claim are the Kmart Safety Handbook ("Safety Handbook") and Kmart

---

faith' because they violate community standards of decency, fairness or reasonableness."  Restatement (Second) of Contracts  § 205.

Associate Handbook ("Associate Handbook").  <u>See</u> Pl.'s Opp'n to Mot. for Summ. J. at 21.

Plaintiff states that, "there is sufficient evidence to find that Kmart failed to comply with its own

Handbooks, and is therefore liable to Plaintiff on the breach of duty of good faith and fair

dealing."  <u>Id</u>. at 24.  Defendant contends that (1) Plaintiff's did not receive either of the

handbooks during her employment with Kmart, (2) neither the Associate Handbook nor the

Safety Handbook constitutes a contract with respect to Plaintiff's employment at Kmart and (3)

even if the handbooks could be deemed employment contracts, the record demonstrates that

Defendant did not breach any duty it owed to Plaintiff under any such contract.  <u>See</u> Def.'s Reply

Mem. in Supp. of Mot. for Summ. J. at 13.

### 1.  *Receipt of Handbooks*

If Plaintiff never received the Safety Handbook or the Associate Handbook, she cannot

establish the existence of an implied contract based on either handbook because mutual assent is

not manifest.  <u>See</u> <u>Isidor Paidewonsky Assoc. v. Sharp Properties, Inc.</u>, 761, F. Supp 1231, 1233

(D.V. I. 1991) (emphasizing that essential prerequisite for creation of valid contract is mutual

assent).  Plaintiff testified that she did not remember receiving the Safety Handbook or the

Associate Handbook during her five-year tenure with Kmart.  <u>See</u> Fraser Dep. 25:19-24.

However, two documents signed by Plaintiff on November 16, 1998 suggest that she did receive

the handbooks: (1) an associate handbook acknowledgement and (2) a new associate orientation

checklist.  The associate handbook acknowledgment states, "This is to certify that the

undersigned on the date indicated received a Kmart Associate Handbook for use while employed

by Kmart Corporation."  The new associate orientation checklist states, "It is your responsibility

to review the entire Kmart Associate Handbook . . . . It is your responsibility to review the entire

Kmart Safety Handbook."

The Court finds that there is a genuine dispute as to whether Plaintiff received the Safety Handbook or the Associate Handbook and will not prematurely determine this issue of material fact.

### 2. *Handbooks as Contracts*

It is well established that "internal personnel rules can be construed as an implied contract, if there is evidence that the employer intended to be bound by the requirements set forth in those rules." Smith v. V.I. Port Auth., 2005 WL 15459, at *4 (D.V.I. Jan. 2, 2005); see Monaco, 359 F.3d at 308. Nonetheless, a company's general personnel practices embodied in a policy manual do not automatically become legally binding terms and conditions of employment. See James v. W. Indian Burgers, 24 V.I. 67, 70 (V.I. Terr. Ct. 1988); Woolley v. Hoffmann-LaRoche, Inc., 491 A.2d 1257 (1985). Employment contracts, like other binding agreements, should be the product of informed understanding and mutual assent as to the subject matter to be covered. Courts sitting in the Virgin Islands have held that, where an employer reserves to itself the absolute discretion to modify, amend or alter the rules without any input whatsoever from the employee, the employer's personnel policies are not intended to constitute an employment contract. W. Indian Burgers, Inc., 24 V.I. at 71; see Smith v. V.I. Water & Power Auth., 2008 U.S. Dist. LEXIS 95852 at *23 (D.V.I. Nov. 24, 2008).

Plaintiff's new associate orientation checklist, which bears her signature and refers to the handbooks, provides in pertinent part:

> The New Associate Orientation checklist has been explained to me in detail. . . The policies and benefits described are not intended to create any contractual relationship or alter the character of the employment relationship in any way. Kmart Corporation reserves the right to alter, modify, amend or terminate these policies and benefits at any time.

The Associate Handbook itself provides in its "Welcome to the Kmart team!" provision:

> This handbook has been prepared to familiarize you with our Company policies, as well as your company benefits. The information and guidelines set forth in this booklet have been provided to help make Kmart a more enjoyable place to work.

The "Employment Relationship" provision of the Associate Handbook provides in pertinent part:

> The policies and benefits described in this handbook are not intended to create any contractual relationship or alter the character of the employment relationship in any way. Kmart reserves the right to alter, modify, amend or terminate these policies and benefits at any time.

Although Plaintiff argues that her claim for breach of the duty of good faith and fair dealing is based on a violation of the provisions contained in Defendant's handbooks, the evidence is unequivocal that Defendant did not intend for either handbook to constitute an implied contract between the company and its employees.[18]  See Pl.'s Opp'n to Mot. for Summ. J. at 21.  Defendant reserved to itself the absolute discretion of modification of the information contained in the handbooks without any input whatsoever from Plaintiff, which suggests that Kmart's personnel policies were not expected to create an employment contract.  See Smith, 2008 U.S. Dist. LEXIS 95852 at *23; W. Indian Burgers, Inc., 24 V.I. at 71.  Moreover, the disclaimer contained in Plaintiff's new associate orientation checklist, which specifically refers to both handbooks and the policies therein, states that "[t]he policies and benefits described are not intended to create any contractual relationship . . ."

The Safety Handbook and Associate Handbook evidence nothing more than efforts to familiarize Defendant's employees with its general policies and procedures.  Similar to the policy manual in W. Indian Burgers, Inc., 24 V.I. at 71, which "specifically states that the

---

[18] The issue of whether the handbooks create an employment contract does not depend on an evaluation of any evidence extrinsic to the writing and, therefore, the Court views the issue as a question of law.  See Restatement (Second) of Contracts § 212, cmt. d.

28

document is intended for 'informational purposes,'" the Associate Handbook states that, [t]he information and guidelines set forth in this booklet have been provided to help make Kmart a more pleasant and enjoyable place to work." Nowhere in the handbooks is there to be found any reference to Plaintiff's specific job description or the compensation to be paid.

The Court finds that the handbooks do not represent implied contracts between the parties because the prerequisites to the creation of a binding contract are not evident as to either handbook. Accordingly, the Court grants summary judgment in favor of Defendants and against Plaintiff on Count IV of the Complaint insofar as Plaintiff alleges a breach of the implied covenant of good faith and fair dealing based on a violation of the employment contract provisions contained in the Safety Handbook and Associate Handbook.

### 3.  *At-Will Employment Agreement*

Plaintiff claims that an at-will contract[19] existed between herself and Defendant during her employment at Kmart. See Pl.'s Opp'n to Mot. for Summ. J. at 20. Courts sitting in the Virgin Islands have recognized a cause of action for breach of the duty of good faith and fair dealing when an at-will employment contract between the parties is found to exist. See Smith, 2008 U.S. Dist. LEXIS 95852 at *24; Bostic, 2003 U.S. Dist. LEXIS 25477 at *7; Petersen v. First Federal Savings and Loan Assn, 617 F. Supp. 1039, 1042 (D.V.I. 1985); Robinson v. Hess Oil Virgin Islands Corp., 1982 U.S. Dist. LEXIS 18353 at *9-10 (D.V.I. May 3, 1982).[20]

---

[19] An employment at-will contract is present when an employer and employee have mutually assented that an employee will work for an employer for an indefinite period of time, which will last as long as is mutually satisfactory. See Marcano v. Cowpet Beach Resort, 1995 WL 217600 at *4 (V.I. Terr. Ct. Mar. 9, 1995).

[20] The Court notes that the holdings in Robinson and its progeny, recognizing a contractual theory of recovery in the area of at-will employment dismissals, are not necessarily dispositive in the Virgin Islands. The District Court rendered its decisions in Robinson without applying the doctrine established in Erie R.R. Co., 304 U.S. 64, "to predict how the Supreme Court of the Virgin Islands would decide an issue of territorial law." Edwards, 497 F.3d at 362. Because the Supreme Court of the Virgin Islands had

Nonetheless, the Supreme Court of the Virgin Islands has not yet addressed the issue of whether an at-will employment agreement gives rise to a contractual duty of good faith and fair dealing. Additionally, the Court notes that a tension exists between the two doctrines insofar as the implied covenant imposes a duty of good faith and fair dealing on an employer who intended to retain total discretion over his or her employment relationships. See Smith, 2008 U.S. Dist. LEXIS 95852 at *24-25 (citing Toner v. Allstate Ins. Co., 829 F. Supp. 695, 698 (D. Del. 1993)).

Although Plaintiff maintains that an at-will contract existed between herself and Defendant, she bases her claim for breach of the covenant of good faith and fair dealing on the alleged implied contracts arising out of Kmart's Safety Handbook and Associate Handbook. See Pl.'s Opp'n to Mot. for Summ. J. at 20. She states that "Kmart's Safety Handbook and Associate Handbook represented an implied employment contract with Plaintiff because Kmart intended to be bound by the requirements set forth in its manuals." Id. Moreover, Plaintiff relies on the provisions contained in the handbooks to support her good faith and fair dealing claim.[21] Id. at 24-25. In sum, Plaintiff's line of argument suggests that (1) the Safety Handbook and Associate Handbook constitute implied contracts, (2) the handbooks themselves gave rise to Defendant's duty to act fairly and in good faith and (3) Defendant breached its duty because it did not abide

---

not yet been established at the time the decision in Robinson was rendered, it would have been impossible for the District Court to meaningfully apply the Erie doctrine in ascertaining Virgin Islands law. Edwards, 497 F.3d at 362 n. 3. "[N]ow that the Virgin Islands has established an insular appellate court and will begin developing indigenous jurisprudence, the District Court, when exercising jurisdiction over cases requiring the application of Virgin Islands law, will be required to predict how the Supreme Court of the Virgin Islands would decide an issue of territorial law, and should seek guidance from Superior Court decisions in undertaking this endeavor." Id.

[21] Plaintiff contends that she "has offered sufficient evidence from which a trier of fact can conclude that there was an employment agreement implied by the Defendant's Associate Handbook and Safety Handbook, which delineated the means by which an employee can complain and seek relief against sexual harassment in the workplace." See Pl.'s Opp'n to Mot. for Summ. J. at 24. Plaintiff argues that Defendant's alleged violation of the provisions in the handbooks was a breach of the covenant of good faith and fair dealing. Id.

by the handbooks' provisions in good faith.

Despite the fact that an at-will employment contract may have existed between the parties and Defendant may have had a duty of good faith and fair dealing arising out of such contract, Plaintiff's line of argument suggests that her good faith and fair dealing claim is based on a wholly different theory.  Therefore, the Court does not reach any issues in this matter regarding a breach of the duty of good faith and fair dealing arising out of an at-will employment contract.[22]

## IV.    CONCLUSION

What remains of Plaintiff's Complaint, as a result of the Court granting summary judgment on certain claims for the reasons discussed, are Plaintiff's claims against Defendant for (1) constructive discharge in violation of the Wrongful Discharge Act and (2) intentional infliction of emotional distress.  Summary judgment is granted in Defendant's favor on Plaintiff's claims for (1) violation of the Virgin Islands civil rights statute 10 V.I.C. § 64, (2)

---

[22] Even if the Court were to find that an implied contract or an at-will employment contract existed, Plaintiff has failed to produce any evidence of fraud, deceit, or misrepresentation on the part of Defendant, which has been required for a plaintiff to succeed on her good faith and fair dealing claim. See Robinson, 1982 U.S. Dist. LEXIS 18353 at *9; see also Marcano, 1995 WL 217600 at *4 (holding that plaintiff "must allege acts by the Defendant that amount to fraud, deceit, or misrepresentation" to succeed on good faith and fair dealing claim).  Plaintiff contends that Defendant's alleged disregard of the policies and procedures contained in the Safety Handbook and Associate Handbook constitutes fraud. See Pl.'s Opp'n to Mot. for Summ. J. at 23.  Specifically, Plaintiff states that "Kmart acted fraudulently, with deceit, and made misrepresentations to Plaintiff regarding her complaints about the sexual harassment to which she was being subjected . . ."  Id.  However, Plaintiff does not provide any material support for her conclusory allegations of fraud.  See Financial Trust Co. v. Citibank, N.A., 268 F. Supp. 2d 561, 575 (D.V.I. 2003); see also In re Rockefeller Ctr. Props., Inc., 311 F.3d 198, 217 (finding that plaintiff must support allegations of fraud with all essential factual background that would accompany "the first page of any newspaper story – that is, the who, what, when, where and how" of events at issue).

negligent infliction of emotional distress and (3) breach of the duty of good faith and fair

dealing.

      **ENTERED this 23rd day of April, 2008.**

_____/s/_____

**HONORABLE RAYMOND L. FINCH**
**SENIOR U.S. DISTRICT JUDGE**